```
                 UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT CHARLESTON
```

**CONSTANCE CLEMENS,**

      Plaintiff,

v.                                       Civil Action No. 2:11-00457

**EMANUEL SOYOOLA, M.D.,**

      Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is the defendant's motion for summary judgment, filed May 24, 2012.

I.  Factual and Procedural Background

The plaintiff, Constance McNeil,[1] sought medical treatment from the defendant, Dr. Emmanuel Soyoola, at the Logan Regional Medical Center in Logan, West Virginia.[2] Compl. ¶ 3. At an unspecified time prior to March 2005, the defendant diagnosed the plaintiff with cervical cancer. Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp.") Ex. A, at 1. Based on

---

[1] Since filing this action as Constance Clemens, <u>see</u> <u>generally</u> Compl., the plaintiff has changed her name, Def.'s Mot. for Summ. J. ¶ 1.

[2] The plaintiff is also employed, as a secretary, by Logan Regional Medical Center. Def.'s Reply to Pl.'s Resp. ("Def.'s Reply") Ex. A, at 2.

subsequent testing and the plaintiff's disinterest in future procreation, the defendant recommended surgery.  Def.'s Mot. for Summ. J. Ex. B, at 2.  The parties discussed removing the plaintiff's uterus, as well as her fallopian tubes and ovaries.  Id.  She expressed a desire to retain her ovaries, but acknowledges that the defendant merely promised to "try to save one, if after he got in there . . . it looked like he would be able to."  Id.  On March 16, 2005, the defendant performed a total abdominal hysterectomy, extracting the uterus, and a bilateral salpingo-oopherectomy, excising both ovaries, in addition to other miscellaneous procedures.  Compl. ¶ 4.

The plaintiff was first informed that both ovaries had been removed during her initial post-surgical consultation with the defendant.  Def.'s Mot. for Summ. J. Ex. B, at 4.  According to the plaintiff, the defendant did not reference any specific biopsy results, but explained the removal of her ovaries as necessary given her particular "type of glandular cancer."  Pl.'s Resp. Ex. C, at 1.  The defendant then recommended hormone replacement therapy to mitigate menopausal symptoms, including hot flashes and mood swings, triggered by the bilateral salpingo-oopherectomy.  Def.'s Mot. for Summ. J. Ex. B, at 5.

In the weeks following surgery, however, the relationship between plaintiff and defendant grew strained.  The

plaintiff ceased seeking medical care from the defendant in March 2006. Id. She consulted no other gynecologist until April 6, 2009, when an associate, Dr. David Afram, learned of her experience and volunteered to examine her medical records. Id. at 8. According to the plaintiff, Dr. Afram determined that she had been erroneously diagnosed with cervical cancer. Id. Dr. Afram acknowledged that the hysterectomy was nonetheless appropriate, given signs of severe cervical dysplasia, but informed the plaintiff that the removal of her ovaries had been unnecessary. Id.

Based on the information obtained from Dr. Afram, the plaintiff eventually notified the defendant of her intent to file suit on March 1, 2011.[3] The actual claim was initiated on June 29, 2012. The plaintiff brought suit in federal court, asserting diversity jurisdiction. See Compl. ¶ 1. Federal diversity jurisdiction extends to all civil actions between citizens of different states, in which the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). In this case, the plaintiff is a citizen of West Virginia, the defendant is a citizen of Georgia, and the complaint notes that the amount-in-

---

[3] The court presumes that the defendant's occasional references to March 1, 2009 as the date of notice, see, e.g., Def.'s Mot. to Dismiss Compl. 2 n.1, are the result of typographical errors. As of March 2009, the plaintiff had not yet consulted Dr. Afram.

3

controversy threshold is satisfied.  Compl. ¶ 1; see also W. Va. Code § 55-7B-5(a) (precluding the complaint from containing a specific statement of damages sought, but permitting a general statement establishing any "minimum jurisdictional amount"); St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938) (stating that the "sum claimed by the plaintiff controls if . . . apparently made in good faith").  Thus, the court may properly exercise jurisdiction over the plaintiff's claim.

The complaint asserts a single cause of action, negligence, under the West Virginia Medical Professional Liability Act, W. Va. Code §§ 55-7B-1 et seq.  Compl. ¶¶ 2-3.  The plaintiff alleges that her bilateral salpingo-oopherectomy was unnecessary and was performed in violation of accepted medical standards.  Id. ¶¶ 4, 7.

On July 21, 2011, the defendant filed a motion to dismiss, contending that the claim was barred by the applicable statute of limitations.  See Mem. Op. 3, Nov. 29, 2011.  The court denied the motion as premature, concluding that the pleadings contained insufficient information to support dismissal.  Id. at 10-11.  The parties were directed to proceed with discovery, as "fundamental questions . . . remain[ed] unanswered."  Id. at 11.

On May 24, 2012, the defendant filed a motion for summary judgment, again asserting an affirmative statute-of-limitations defense. See Def.'s Mot. for Summ. J. ¶¶ 13-20.

## II.  Motion for Summary Judgment

A. Governing Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id.  The moving party has the burden of showing — "that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be

5

admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United

States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

B.  Statute of Limitations

The defendant contends that summary judgment is appropriate as a matter of law given the plaintiff's failure to comply with the relevant statute of limitations.  Def.'s Mot. for Summ. J. ¶¶ 13-14, 21.  The defendant notes that the six-year delay between the plaintiff's surgery, which occurred on March 16, 2005, and the commencement of her suit, filed on June 29, 2011, far exceeds the two-year statute of limitations prescribed by West Virginia law.  Id. ¶¶ 13-14.  In response, the plaintiff asserts that the statute of limitations was tolled until her April 6, 2009 meeting with Dr. Afram under West Virginia's incarnation of the discovery rule.  Pl.'s Resp. ¶¶ 3-5.  Thus, the plaintiff argues that notice of her claim, served before April 6, 2011, satisfies the two-year statute.[4]  Id. ¶ 6.

When federal jurisdiction is predicated solely upon diversity of citizenship, state law provides the governing statute of limitations.  See, e.g., Harbor Court Assocs. V. Leo A. Daly Co., 179 F.3d 147, 149, 153 (4th Cir. 1999); Connor v. St. Luke's Hosp., Inc., 996 F.2d 651, 652-53 (4th Cir. 1993).  Under West Virginia law, once a statute-of-limitations defense

---

[4] See infra Section II.C.

has been raised, a five-step, sequential analysis is required to determine the viability of the challenged claim.  See Mack-Evans v. Hilltop Healthcare Ctr., Inc., 700 S.E.2d 317, 322 (W. Va. 2010) (quoting Dunn v. Rockwell, 689 S.E.2d 255 syllabus at ¶ 5 (W. Va. 2009)).  First, the court must "identify the applicable statute of limitations for each cause of action."  Id.  Second, the date on which the cause of action accrued must be determined.  Id.  Third, the discovery rule should be applied to assess whether the statute of limitations was tolled until "the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action."  Id.  The fourth and fifth stages of the analysis, reached only if the discovery rule is inapplicable, require consideration of similar tolling doctrines.  See id.

Applying the analytical framework, the court first notes that under West Virginia law, all claims arising from potentially tortious healthcare services "must be commenced within two years of the date of . . . injury."  W. Va. Code § 55-7B-4(a); see also § 55-7B-2(i).  Second, it is undisputed that all requisite elements of the medical-professional-liability cause of action accrued shortly after March 16, 2005, during the plaintiff's first post-operative consultation.  See Mem. of L. in Supp. of Def.'s Mot. for Summ. J. 3.

Consequently, the plaintiff's sole claim, filed on June 29, 2011, initially appears barred by the two-year statute of limitations.

The latter stages of the sequential analysis, however, attempt to mitigate unduly harsh results produced by mechanical application of the statute of limitations. The third step thus requires consideration of the discovery rule, a tolling doctrine with the potential to delay the running of the statute. <u>Mack-Evans</u>, 700 S.E.2d at 322 (quoting <u>Dunn</u>, 689 S.E.2d syllabus at ¶ 5). The discovery rule provides that "the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury." <u>Gaither v. City Hosp., Inc.</u>, 487 S.E.2d 901 syllabus at ¶ 4 (W. Va. 1997).

In this case, neither party disputes that the plaintiff was aware of her injuries — the removal of her ovaries and the resulting menopausal symptoms — shortly after her surgery on March 16, 2005. Def.'s Mot. for Summ. J. ¶¶ 6, 14; Pl.'s Resp. Ex. B, at 1. The plaintiff was also well aware of

the defendant's identity, his duty to her as a medical professional, and his causal role in excising her ovaries. Pl.'s Resp. Ex. B, at 1. The defendant, however, presents no evidence that the plaintiff knew, or with reasonable diligence should have known, that the defendant potentially breached his duty of care before her meeting with Dr. Afram on April 6, 2009. The knowledge that both her ovaries had been removed, without more, is not sufficient evidence of malpractice to trigger any affirmative duty to investigate.

Indeed, the plaintiff anticipated the loss of her ovaries as a possible, albeit undesirable, consequence of her diagnosis. Def.'s Mot. for Summ. J. Ex. B, at 13 (noting that the defendant only agreed to "try to save one" ovary if "after he got in there . . . everything looked okay"). Furthermore, although a post-surgical notice of the negative biopsy results for both cervical and ovarian cancer would have spurred a reasonable, diligent plaintiff to question the removal of her ovaries, no such notice was provided. Accepting the plaintiff's version of events as true, the defendant never informed the plaintiff of her negative biopsies, instead placating her with nebulous assurances that her "type of glandular cancer" required the removal of both ovaries. Def.'s Reply Ex. B, at 4, 6. Thus, the defendant has failed to adduce any compelling evidence

that a reasonable, diligent patient would have been aware of the defendant's potential breach of duty before April 6, 2009.[5] Accordingly, a rational trier of fact need not conclude that the statute of limitations began running well before April 6, 2009, barring the plaintiff's claim. As a result, summary judgment is inappropriate. Cf. Gaither, 487 S.E.2d at 909-10 ("'The question of when plaintiff knows or in the exercise of reasonable diligence has reason to know of medical malpractice is for the jury.'" (quoting Hill v. Clarke, 241 S.E.2d 574 syllabus at ¶ 4 (W. Va. 1978))).

The Supreme Court of Appeals of West Virginia has recognized a narrow exception to the discovery rule. Certain adverse results, "so extraordinary that the patient is immediately aware that something went wrong," render ignorance of the underlying malpractice unreasonable as a matter of law. Gaither, 487 S.E.2d at 907 (quoting Harrison v. Seltzer, 268 S.E.2d 312, 315 (W. Va. 1980)). Such unexpected, extraordinary results include loss of sight following a sinus operation, partial foot paralysis following a tonsillectomy, pregnancy following a husband's vasectomy, and paralysis in both legs following removal of a cyst from a patient's back. Id. & n.6

---

[5] Absent circumstances suggesting potential malpractice, the plaintiff's position at Logan Medical Center and her ability to access her medical records are irrelevant. See Gaither, 487 S.E.2d at 910.

(citations omitted).  The state supreme court, however, has repeatedly observed that the discovery rule generally does not provide an appropriate basis for summary adjudication.  See Mack-Evans, 700 S.E.2d at 322 (quoting Dunn, 689 S.E.2d syllabus at ¶ 5) (stating that application of the various tolling doctrines "will generally involve questions of material fact that will need to be resolved by the trier of fact").

In this case, as discussed above, the removal of the plaintiff's ovaries was not an unexpected "extraordinary" result or an immediate indication of potential malpractice.  Rather, the removal of her ovaries was the intended goal of a surgical procedure recommended by the defendant and approved by the plaintiff.  See Def.'s Mot. for Summ. J. Ex. B, at 3.  The two primary cases cited by the defendant are easily distinguishable inasmuch as both involved unexpected injuries sufficient to prompt swift investigation.  See Legg v. Rashid, 663 S.E.2d 623, 628-30 (W. Va. 2008) (classifying the unexpected injury — loss of vision immediately following ocular surgery — as an "extraordinary result" that precluded the plaintiff from invoking the discovery rule); McCoy v. Miller, 578 S.E.2d 355, 357, 360 (W. Va. 2003) (categorizing the plaintiff's claim of ignorance as unreasonable under the auspices of the discovery rule, given both the severity of the plaintiff's post-surgical

complication and the plaintiff's prior medical-malpractice suit arising from the same transaction). Accordingly, the defendant has failed to convince the court that a rational trier of fact would be required to classify the plaintiff's injury as extraordinary, precluding application of the discovery rule.[6]

C.  Potentially Dispositive Issues Not Addressed by the Parties

Even assuming the discovery rule applicable and the statute of limitations tolled until April 6, 2009, the plaintiff's claim may still be barred.

Section 55-7B-6(h) of the West Virginia Code, which is addressed only peripherally by the parties, clearly states that serving a notice of claim upon a healthcare provider tolls the applicable statute of limitations from "the date of mail" to thirty days following either "receipt of a response to the notice of claim," "the date a response would be due," or "receipt by the claimant of written notice from the mediator that the mediation has not resulted in a settlement of the alleged claim and that mediation is concluded, whichever last occurs."  W. Va. Code § 55-7B-6(h).

---

[6] Having resolved the motion for summary judgment at the third stage of West Virginia's sequential statute-of-limitations analysis, the court need not address the plaintiff's arguments concerning fraudulent concealment, which implicate the fourth stage.  See Mack-Evans, 700 S.E.2d at 322 (quoting Dunn, 689 S.E.2d 255 syllabus at ¶ 5).

Assuming the statute tolled by the discovery rule until the plaintiff's April 6, 2009 meeting with Dr. Afram, the requisite notice was mailed on March 1, 2011, one month and five days before the two-year limitations period would have expired. Under the rubric of section 55-7B-6(h), service of the requisite notice tolls the statute of limitations from the date of mailing, March 1, 2011, until thirty days after the defendant's response would have been due on April 4, 2011.[7]  See id. Therefore, the remainder of the limitations period was tolled from March 1, 2011 through May 4, 2011, eventually expiring one month and five days later on June 9, 2011.  As a result, the plaintiff's claim, not filed until June 29, 2011, appears barred.

Before the court issues a final ruling, however, the parties are ordered to submit supplemental briefs addressing the applicability of W. Va. Code § 55-7B-6, the calculation of all relevant dates thereunder, and any potential justification for

---

[7] The court is unaware of an actual response by the defendant or of a request for mediation, rendering the "date a response would have been due" as the last occurrence enumerated by the statute. See W. Va. Code § 55-7B-6(h).  The notice was mailed on March 1, 2011.  Assuming receipt three days later, on March 4, 2011, see Fed. R. Civ. P. 6(d), a response would have been due within thirty days, see W. Va. Code § 55-7B-6(e).  The resulting deadline, Sunday, April 3, 2011, would have been extended to Monday, April 4, 2011.  See Fed. R. Civ. P. 6(a)(1)(C).

the plaintiff's failure to file a claim within the period provided by section 55-7B-6. The defendant's brief must be filed on or before October 29, 2012, and the plaintiff's response on or before November 5, 2012.

### III. Conclusion

For the reasons discussed above, resolution of the defendant's motion for summary judgment is deferred pending receipt of the additional briefing sought as above.

The Clerk is directed to forward a copy of this written opinion and order to counsel of record and any unrepresented parties.

DATED: October 19, 2012

John T. Copenhaver, Jr.
United States District Judge